## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT WOLFE, Individually and on Behalf of All Others Similarly Situated,<br><br>                      Plaintiff,<br><br>       v.<br><br>EXPRESS SCRIPTS HOLDING COMPANY, GEORGE PAZ, TIMOTHY WENTWORTH, MAURA C. BREEN, WILLIAM J. DELANEY, ELDER GRANGER, NICHOLAS J. LAHOWCHIC, KATHLEEN M. MAZZARELLA, THOMAS P. MAC MAHON, FRANK MERGENTHALER, WOODROW A. MYERS JR., RODERICK A. PALMORE, WILLIAM L. ROPER, and SEYMOUR STERNBERG,<br><br>                   Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>   **1. VIOLATIONS OF SECTION 14(a) OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 14a-9**<br><br>   **2. VIOLATIONS OF SECTION 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** |

Robert Wolfe ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

### NATURE OF THE ACTION

1. This is a class action brought by Plaintiff on behalf of himself and the other shareholders of Express Scripts Holding Company ("Express Scripts" or the "Company"), except Defendants (defined below) and their affiliates, against Express Scripts and the members of Express Scripts' board of directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Item 1015 of Reg M-A,

17 C.F.R. 229.1015, in connection with the proposed merger (the "Proposed Merger") between Express Scripts and Cigna Corporation ("Cigna").

2.      On March 8, 2018, the Board caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with the Cigna, pursuant to which, Express Scripts shareholders will receive (1) 0.2434 of a share of New Cigna common stock; and (2) the right to receive $48.75 in cash (the "Merger Consideration").

3.      On, July 16, 2018, the Board authorized the filing of a materially incomplete and misleading definitive proxy statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act recommending shareholders to vote in favor of the Proposed Merger and setting a special meeting of Express Scripts shareholders to vote on the Proposed Merger for August 24, 2018 (the "Shareholder Vote").

4.      While Defendants are touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, they have failed to disclose material information that is necessary for shareholders to properly assess the fairness of the Proposed Merger, thereby rendering certain statements in the Proxy incomplete and misleading. Specifically, the Proxy contains materially incomplete and misleading information concerning: (i) the valuation analyses performed by the Company's financial advisors, Centerview Partners LLC ("Centerview") and Lazard Frères & Co. LLC ("Lazard" and together with Centerview, the "Financial Advisors"), in support of their fairness opinions; and (ii) the conflicts of interest faced by Lazard.

5.      It is imperative that the material information omitted from the Proxy is disclosed to the Company's shareholders prior to the August 24, 2018, Shareholder Vote, so that they can properly exercise their corporate suffrage rights.

6.      For these reasons as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, Rule 14a-9, and Reg M-A. Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless and until the material information discussed below is disclosed to Express Scripts shareholders, or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331, federal question jurisdiction, as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

8.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Express Scripts is incorporated in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

10.     Plaintiff is, and has been at all relevant times, the owner of Express Scripts common stock and held such stock since prior to the wrongs complained of herein.

11.     Defendant Express Scripts is a Delaware corporation with its principle executive offices located at One Express Way, Saint Louis, Missouri 63121.  Express Scripts provides integrated pharmacy benefit management services, including network-pharmacy claims processing, home delivery pharmacy care, specialty pharmacy care, specialty benefit management, benefit-design consultation, drug utilization review, formulary management, and medical and drug data analysis services. Express Scripts's common stock trades on the NASDAQ under the symbol "ESRX."

12.     Individual Defendant George Paz is director of Express Scripts and Chairman of the Board.

13.     Individual Defendant Timothy Wentworth is a director of Express Scripts and the President and Chief Executive Officer of the Company.

14.     Individual Defendant Maura C. Breen is, and has been at all relevant times, a director of Express Scripts.

15.     Individual Defendant William J. DeLaney is, and has been at all relevant times, Lead Director of Express Scripts.

16.     Individual Defendant Elder Granger is, and has been at all relevant times, a director of Express Scripts.

17.     Individual Defendant Nicholas J. LaHowchic is, and has been at all relevant times, a director of Express Scripts.

18.     Individual Defendant Kathleen M. Mazzarella is, and has been at all relevant times, a director of Express Scripts.

19.     Individual Defendant Thomas P. Mac Mahon is, and has been at all relevant times, a director of Express Scripts.

20.     Individual Defendant Frank Mergenthaler is, and has been at all relevant times, a director of Express Scripts.

21.     Individual Defendant Woodrow A. Myers Jr. is, and has been at all relevant times, a director of Express Scripts.

22.     Individual Defendant Roderick A. Palmore is, and has been at all relevant times, a director of Express Scripts.

23.     Individual Defendant William L. Roper is, and has been at all relevant times, a director of Express Scripts.

24.     Individual Defendant Seymour Sternberg is, and has been at all relevant times, a director of Express Scripts.

25.     The parties identified in ¶¶ 11-24 are collectively referred to as the "Defendants".

## CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all holders of Express Scripts common stock who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

27.     This action is properly maintainable as a class action for the following reasons:

(a)     The Class is so numerous that joinder of all members is impracticable.  As of the close of business on July 12, 2018, Express Scripts had 281,060,332 shares of common stock outstanding held by hundreds to thousands of individuals and entities—the actual number of public shareholders of Express Scripts will be ascertained through discovery.

(b)     The holders of these shares are believed to be geographically dispersed through the United States;

(c)     There are questions of law and fact which are common to the Class and which predominate over questions affecting individual Class members.  The common questions include, *inter alia*, the following:

    i.   Whether Defendants have violated Section 14(a) of the Exchange act and/or Rule 14a-9 promulgated thereunder;

    ii.  Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

    iii. Whether Plaintiff and the other members of the Class would suffer irreparable injury were they required to vote on the Proposed Merger as presently anticipated.

(d)     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(e)     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

(f)     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**I.      Background and the Proposed Merger**

28.     Express Scripts, incorporated on July 15, 2011, is a pharmacy benefit management ("PBM") company. The Company is engaged in providing healthcare management and administration services to its clients, including managed care organizations, health insurers, third-party administrators, employers, union-sponsored benefit plans, workers' compensation plans, and government health programs. The Company operates through two segments: PBM and Other Business Operations. The PBM segment includes its integrated PBM operations and specialty pharmacy operations. Its Other Business Operations segment includes its subsidiary, United BioSource Corporation, and its specialty distribution operations.

29.     Cigna, incorporated on November 3, 1981, together with its subsidiaries, is a health services company. The Company offers medical, dental, disability, life, and accident insurance and related products and services. The Company's segments include Global Health Care, Global Supplemental Benefits, Group Disability and Life, and Other Operations and Corporate. The Company's products are offered through employers and other groups, such as Governmental and non-Governmental organizations, unions, and associations. Cigna also offers commercial health and dental insurance, Medicare and Medicaid products, and health, life, and accident insurance coverages to individuals in the United States and international markets. The Company's other business operations include corporate-owned life insurance business, run-off reinsurance, and settlement annuity businesses.

30.     On March 8, 2018, Cigna and Express Scripts issued a joint press release to announce the Proposed Merger stating, in relevant part, as follows:

### Cigna to Acquire Express Scripts for $67 Billion

Drives greater affordability and connectivity with customers and their health care providers, while making health care simpler

Creates an expanded portfolio of health services with greater choice, alignment and value across a proven services platform

Expands distribution of health services for employers, health plans and government agencies

Delivers first year double digit earnings per share accretion and enhances Cigna's revenue and earnings growth

BLOOMFIELD, Conn. & ST. LOUIS--(BUSINESS WIRE)--Mar. 8, 2018-- Cigna Corporation (NYSE: CI) and Express Scripts Holding Company (NASDAQ: ESRX) today announced that they have entered into a definitive agreement whereby Cigna will acquire Express Scripts in a cash and stock transaction valued at approximately $67 billion, including Cigna's assumption of approximately $15 billion in Express Scripts debt. The merger consideration will consist of $48.75 in cash and 0.2434 shares of stock of the combined company per Express Scripts share. The transaction was approved by the board of directors of each company.

"Cigna's acquisition of Express Scripts brings together two complementary customer-centric services companies, well-positioned to drive greater quality and affordability for customers," said David M. Cordani, President and Chief Executive Officer of Cigna. "This combination accelerates Cigna's enterprise mission of improving the health, well-being and sense of security of those we serve, and in turn, expanding the breadth of services for our customers, partners, clients, health plans and communities. Together, we will create an expanded portfolio of health services, delivering greater consumer choice, closer alignment between the customer and health care provider, and more personalized value. This combination will create significant benefits to society and differentiated shareholder value."

"First and foremost, we believe this transaction delivers attractive value to the Express Scripts shareholders" said Tim Wentworth, President and Chief Executive Officer of Express Scripts. Regarding the combination of Cigna and Express Scripts, Mr. Wentworth noted, "Together, our two organizations will help make the healthiest choices the easiest choices, putting health and pharmacy services within reach of everyone we serve. Adding our company's leadership in pharmacy and medical benefit management, technology-powered clinical solutions, and specialized patient care model to Cigna's track record of delivering value through

innovation, we are positioned to transform healthcare. We will continue to have a distinct focus at Express Scripts and eviCore on partnering with health plans, and together, build tailored solutions for health plans and their members. Importantly, this agreement is a testament to the work of our team and their resolute focus on providing the best care to patients, and the most value to clients."

**Compelling Strategic Benefits**

Expanded Consumer Choice. Offering a full suite of medical, behavioral, specialty pharmacy and other health engagement services accessible across a wide array of retail and online distribution channels, providing optionality for all customers. This will position the combined company to deliver superior services, responding fully to the dynamic needs of our customers and clients, which will drive long-term value creation for shareholders.
Patient-Provider Alignment. Using a broad and proven network of delivery system partnerships to drive the combined company's role as the connective tissue between individuals and their health care providers, providing a more coordinated approach to an individual's health care journey, reducing complexity and creating better outcomes.
Personalized Value. Making health care simpler for consumers by harnessing actionable insights and predictive analytics, maximizing adoption of evidence-based care and delivering industry-leading innovation and medical technology to support care decisions.

**Terms of the Agreement**

Under the terms of the definitive agreement, the transaction consideration will consist of $48.75 in cash and 0.2434 shares of stock of the combined company per Express Scripts share, or $54 billion in the aggregate. Upon closing of the transaction, Cigna shareholders will own approximately 64% of the combined company and Express Scripts shareholders will own approximately 36%. The consideration represents an approximately 31% premium to Express Scripts' closing price of $73.42 on March 7, 2018.

Upon closing, the combined company will be led by David M. Cordani as President and CEO. Tim Wentworth will assume the role of President, Express Scripts. The combined company's board will be expanded to 13 directors, including four independent members of the Express Scripts board.

The combined company will be named Cigna. Cigna's headquarters in Bloomfield, Connecticut, will become the headquarters for the combined company, and Express Scripts will be headquartered in St. Louis, Missouri. At closing, the combined company will make an incremental investment of $200 million in its charitable foundation, to support the communities in which it operates, and with the continued focus on improving societal health.

**Financing, Closing and Approvals**

Cigna intends to fund the cash portion of the transaction consideration through a combination of cash on hand, assumed Express Scripts debt and new debt issuance and Cigna has obtained fully committed debt financing from Morgan Stanley Senior Funding, Inc. and The Bank of Tokyo-Mitsubishi UFJ, Ltd. The transaction is not subject to a financing condition. Upon completion of the transaction, Cigna is expected to have debt of approximately $41.1 billion. Cigna expects to have a debt-to-capitalization ratio of approximately 49% following the acquisition, and aims to achieve a ratio in the 30's within 18 to 24 months after the transaction closes. Cigna expects to maintain its investment grade ratings.

The transaction, which is expected to be completed by December 31, 2018, is subject to the approval of Cigna and Express Scripts shareholders and the satisfaction of customary closing conditions, including applicable regulatory approvals. Until the closing, Cigna and Express Scripts will continue to operate as independent companies.

**Advisors**

Morgan Stanley & Co. LLC is acting as sole financial advisor and provided a fairness opinion to the Cigna Board of Directors, Wachtell, Lipton, Rosen & Katz is serving as legal counsel and Paul, Weiss, Rifkind, Wharton & Garrison LLP is serving as regulatory counsel to Cigna. Centerview Partners LLC and Lazard Frères & Co. LLC are acting as financial advisors, Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal counsel and Holland & Knight LLP is serving as regulatory counsel to Express Scripts.

## II.    The Proxy Is Materially Incomplete and Misleading

31.    On July 16, 2018, Express Scripts filed the Proxy with the SEC in connection with the Proposed Merger.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Merger.  Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to cast an informed vote regarding Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

32.     First, with respect to the *Discounted Cash Flow* Analyses prepared by the Financial Advisors, the Proxy fails to disclose the following key components used in their analyses: (i) the inputs and assumptions underlying the calculation of the various discount rate ranges (including the WACC components); (ii) the inputs and assumptions underlying the selected perpetuity growth rates; and (iii) the various terminal values calculated.

33.     These key inputs are material to Express Scripts shareholders, and their omission renders the summary of the *Discounted Cash Flow* Analyses incomplete and misleading.  As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" Id.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

Id. at 1577-78. Without the above-omitted information Express Scripts shareholders are misled as to the reasonableness or reliability of the Financial Advisors' analyses, and unable to properly

assess the fairness of the Proposed Merger.  As such, these omissions render the summary of the Discounted Cash Flow Analyses included in the Proxy materially incomplete and misleading.

34.     Second, both of the Financial Advisors fairness opinions include summaries for research analyst price targets, but the Proxy fails to provide a complete disclosure of each analyst price target observed. A fair summary of this analysis requires the disclosure of the individual targets for each analyst observed. Merely providing a range is insufficient, as shareholders are unable to assess whether the financial advisor summarized fairly, or, instead, emphasized only the figures that best present the targets in light of the Merger Consideration, i.e. as low as possible. The omission of this information renders the summary of this analysis included in the Proxy materially incomplete and misleading.

35.     Third, the Proxy references the Financial Advisors' use of Express Scripts' net debt as of March 2, 2018, Cigna's net debt as of March 2, 2018, and pro forma net debt for the combined company throughout the summaries of their fairness opinions, but fail to disclose the values of such financial metrics. This financial information is material to Express Scripts' shareholders, because it was provided to and relied upon by the Financial Advisors. Indeed, in the prospective financial information section of the Proxy, Express Scripts acknowledges the importance of this information: "Express Scripts is electing to provide such information in this joint proxy statement/prospectus because such information was provided to Express Scripts' financial advisors in connection with their respective financial analyses and Cigna for purposes of considering and evaluating the mergers." Proxy at 144. Therefore, it must also be provided to shareholders. The failure to include the above information renders the summaries provided materially incomplete and misleading.

36.     Fourth, and finally, the Proxy fails to disclose the amount of compensation Lazard received for acting as a financial advisor to Express Scripts in connection with its acquisition of CareCore National Group, LLC. Disclosure of "any material relationship that existed during the past two years or is mutually understood to be contemplated and any compensation received or to be received as a result of the relationship between" a financial advisor and the subject company or its affiliates is required pursuant to 17 C.F.R. § 229.1015(b)(4). Such information is plainly material to Express Scripts shareholders. It is imperative for shareholders to be able to understand what factors might influence the financial advisor's analytical efforts. A financial advisor's own proprietary financial interest in a Proposed Merger must be carefully considered when assessing how much credence to give its analysis. A reasonable shareholder would want to know what important economic motivations that the advisor, employed by a board to assess the fairness of the transaction to the shareholders, might have. This is especially true when that motivation could rationally lead the advisor to favor a deal at a less than optimal price, because the procession of a deal was more important to them—given their overall economic interest—than only approving a deal at truly fair price to shareholders.

37.     On page 139, the Proxy states: "Lazard in the past provided certain investment banking services to Express Scripts and/or certain of its affiliates unrelated to the transaction, for which Lazard received compensation..." However, the Proxy fails to disclose the amount of compensation Lazard received. The omission of quantified compensation details from Lazard's previous work as financial advisor renders the description in the Proxy and Lazard's fairness opinion materially incomplete and misleading, and in violation of 17 C.F.R. § 229.1015(b)(4).

38.     In sum, the omission the of the above-referenced information renders statements in the Proxy materially incomplete and misleading in contravention of the Exchange Act.  Absent

disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**COUNT I**

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act**

39.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

41.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

42.     Item 1015 of Regulation M-A requires "[a]ny report, opinion or appraisal relating to the consideration or the fairness of the consideration to be offered to security holders or the fairness of the transaction to the issuer or affiliate or to security holders who are not affiliates" to

"[d]escribe any material relationship that existed during the past two years or is mutually understood to be contemplated and any compensation received or to be received as a result of the relationship between: (i) The outside party, its affiliates, and/or unaffiliated representative; and (ii) The subject company or its affiliates." 17 CFR 229.1015

43.     The omission of information from a proxy statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

44.     Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Merger.  Each of the Defendants reviewed and authorized the dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information regarding: (i) the valuation analyses performed by the Financial Advisors; and (ii) the conflicts of interest faced by Lazard.

45.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

46.     Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most, if not all, of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger. Indeed, the Proxy states that Defendants were privy to and had knowledge of the financial

projections for Express Scripts and the details surrounding discussions with other interested parties and the Financial Advisors.  Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to review the Financial Advisors' analyses in connection with their receipt of the fairness opinions, question the bankers as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

47.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement, the preparation and review of strategic alternatives, and the review of Express Scripts's financial projections.

48.     Express Scripts is also deemed negligent as a result of the Individual Defendants negligence in preparing and reviewing the Proxy.

49.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, and will deprive them of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the shareholder vote on the Proposed Merger.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff

be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**On Behalf of Plaintiff and the Class Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

50.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51.     The Individual Defendants acted as controlling persons of Express Scripts within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Express Scripts, and participation in and/or awareness of the Express Scripts's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Express Scripts, including the content and dissemination of the statements that Plaintiff contends are materially incomplete and misleading.

52.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Express Scripts, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Merger.  The Proxy at issue contains the

unanimous recommendation of the Board to approve the Proposed Merger. The Individual Defendants were thus directly involved in the making of the Proxy.

54.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

55.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of the Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

57.     Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## <u>RELIEF REQUESTED</u>

WHEREFORE, Plaintiff demands relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A.  Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.   Preliminarily and permanently enjoining Defendants and their counsel, agents, employees, and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Merger, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

C.   Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D.   Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

E.   Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.   Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: July 27, 2018

**OF COUNSEL**

**MONTEVERDE & ASSOCIATES PC**

Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel.: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*

Respectfully submitted,

**COOCH AND TAYLOR, P.A.**

*/s/ Blake A. Bennett*
Blake A. Bennett (#5133)
The Brandywine Building
1000 West Street, 10th Floor
Wilmington, DE 19801
(302) 984-3800

*Attorneys for Plaintiff*